UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PETERSON, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　　Defendant. | Case No. 13-cv-03392-MEJ<br><br>**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 41 |

## INTRODUCTION

Pending before the Court is Defendant Wells Fargo Bank N.A.'s Motion to Dismiss Plaintiffs Michael and Toni Peterson's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 41. Plaintiffs have filed an Opposition (Dkt. No. 44), and Wells Fargo has filed a Reply (Dkt. No. 45). The Court finds this motion suitable for disposition without oral argument and hereby VACATES the July 31, 2014 hearing. Civ. L.R. 7-1(b). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court **GRANTS IN PART AND DENIES IN PART** Wells Fargo's Motion for the reasons set forth below.

## BACKGROUND

On December 21, 2007, Plaintiffs borrowed $900,000.00 from World Savings Bank, FSB secured by a deed of trust recorded against 4442 Arlington Ave, Santa Rosa, California (the "Property"). First. Am. Compl. ("FAC") ¶ 11, Dkt. No. 40; Req. for Jud. Not. ("RJN") Ex. A, Dkt. No. 42.[1] Subsequently, in January 2008, World Savings Bank, FSB changed its name to

---

[1] Along with its Motion to Dismiss, Wells Fargo requested that the Court take judicial notice of the following documents: (1) Deed of Trust dated December 21, 2007, signed by Plaintiffs and

1   Wachovia Mortgage, FSB, and later changed its name to Wells Fargo Bank Southwest, N.A.,

2   before merging into Wells Fargo Bank, N.A. ("Wells Fargo") in November 2009.[2]

3         Around July of 2009, Plaintiffs allege that Wells Fargo sent them a loan modification offer

4   in the mail, which provided for an increase in loan payment amounts every year between 2009 and

5   2015. *Id.* ¶ 26. On July 16, 2009, Plaintiffs called Mary C. Reeder, the Wells Fargo

6   representative who signed the loan modification offer. *Id.* ¶ 27. During their telephone

7   conversation, Plaintiffs allege that Ms. Reeder informed them that if they entered into a loan

8   modification agreement and made payments for the first 12 months, Wells Fargo "would give

9   Plaintiffs a new loan modification agreement that would decrease the monthly payment amount

10  for the next year." *Id.* ¶ 29. This new loan modification agreement would "negate the yearly

11  increase in payments described in the loan modification agreement Plaintiffs were being asked to

12  sign." *Id.*

13        Based on Ms. Reeder's representations, Plaintiffs signed the loan modification agreement

14  and timely made the first 12 monthly payments. *Id.* ¶ 30. However, Plaintiffs allege that Wells

15  Fargo knew these representations to be false and made them to induce Plaintiffs to act in reliance,

16  thereby "collect[ing] additional monies from Plaintiffs and eventually begin[ning] the foreclosure

17  process on the Subject Property without Plaintiffs' protests." *Id.* ¶ 34. In July 2010, Plaintiffs

18  contacted Wells Fargo to ask what they needed to do to obtain the lower monthly payment, but

19  Wells Fargo would not lower the terms as promised. *Id.* ¶¶ 17-18. Despite its promises to the

20  contrary, Plaintiffs maintain that Wells Fargo deceived them and "did not intend to offer Plaintiffs

21  any options to save their home." *Id.* ¶¶ 22, 33.

22        Plaintiffs allege that they relied on Wells Fargo's representation in that they "refrained

23  from obtaining other alternatives to remedy this situation, including but not limited to obtaining

---

recorded in the Official Records of the Sonoma County Recorder's Office on December 27, 2007, as Document No. 2007135592 (Ex. A); and (2) Complaint commencing Case No. SCV253841, filed with the Superior Court for the County of Sonoma on June 19, 2013 (Ex. B). Plaintiffs filed no objections to Wells Fargo's request. Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of these documents because they are matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

[2] The Court previously took judicial notice of the documents establishing this history. *Order re: Motion to Dismiss* at 2, fn. 1, Dkt. No. 37.

United States District Court
Northern District of California

1 alternative financing, or proceeding with a short sale." *Id.* ¶ 42.  Plaintiffs also allege that they
2 "spent money in improving the Subject Property and in complying with Defendants' repeated
3 requests for financial and other information." *Id.* ¶ 43.  They maintain that they are now subject to
4 foreclosure proceedings and the loss of their primary residence as a proximate cause of Wells
5 Fargo's fraudulent conduct.  *Id.* ¶ 38.

Based on these allegations, Plaintiffs assert three state law claims: (1) fraud; (2) promissory estoppel; and (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.  *Id.*  ¶¶ 24-55.  Plaintiffs seek damages, attorneys' fees, declaratory and injunctive relief, and restoration of their credit score.

Wells Fargo filed the present Motion to Dismiss on June 20, 2014.  In its Motion, Wells Fargo argues that Plaintiffs fail to state a claim for fraud because: (i) the claim lacks sufficient facts to show that the Plaintiffs are entitled to relief; (ii) Plaintiffs fail to plead fraud with specificity; (iii) Plaintiffs fail to allege resulting damages; and (iv) Plaintiffs do not adequately plead intent to deceive.  Mot. at 2.  As to Plaintiff's Promissory Estoppel claim, Wells Fargo argues that they fail to state a claim for promissory estoppel because: (i) the claim lacks sufficient facts to show that the Plaintiffs are entitled to relief; (ii) the claim is barred by the statute of limitations; (iii) Plaintiffs fail to show reasonable reliance; and (iv) Plaintiffs fail to plead adequate injury.  *Id.*  As to their UCL claim, Wells Fargo argues that Plaintiffs fail to state a claim because: (i) the claim lacks sufficient facts to show that the Plaintiffs are entitled to relief; (ii) the common law claims asserted in support of violation of the UCL are defective; and (iii) Plaintiffs do not plead an injury sufficient to provide them with standing.  *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3

1 (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the
2 court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the
3 light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519
4 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal
5 theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v.*
6 *Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations
7 omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a
8 court to dismiss a claim on the basis of a dispositive issue of law").

9 Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only
10 required to make "a short and plain statement of the claim showing that the pleader is entitled to
11 relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of
12 a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.)
13 "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to
14 dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652
15 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply
16 recite the elements of a cause of action, but must contain sufficient allegations of underlying facts
17 to give fair notice and to enable the opposing party to defend itself effectively"). The court must
18 be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."
19 *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . .
20 [is] a context-specific task that requires the reviewing court to draw on its judicial experience and
21 common sense." *Id.* at 663-64.

22 If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no
23 request to amend the pleading was made, unless it determines that the pleading could not possibly
24 be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
25 banc) (internal quotation marks and citations omitted).

## DISCUSSION

**A. Fraud**

28 In their First Cause of Action for Fraud, Plaintiffs allege that Wells Fargo's representations

4

1    regarding the loan modification were false and made with the intent to deceive and defraud
2    Plaintiffs. FAC ¶ 33. At the time these representations were made, Plaintiffs believed them to be
3    true and, had they known the falsity of these representations, they would not have acted as they
4    did. *Id.* ¶ 35. As a result of Wells Fargo's conduct, Plaintiffs state that they are now subject to
5    foreclosure proceedings and have been forced to incur expenses, including retaining a law firm to
6    enforce their rights. *Id.* ¶ 38.

7    In its Motion, Wells Fargo argues that Plaintiffs' allegation that it would "give" them a
8    new loan modification agreement with lower payments is insufficient to satisfy the heightened
9    pleading standards for fraud. Mot. at 3. Specifically, Wells Fargo notes that Plaintiffs do not
10   explain whether this promise "was merely an offer for another loan modification review in a year,
11   or whether there were any conditions imposed on the second loan modification." *Id.* Wells Fargo
12   contends that the promise was directly at odds with the terms of the written modification
13   agreement Plaintiffs were being asked to sign; thus, in order for Plaintiffs to have justifiably relied
14   on the alleged promise, the specific contents of that promise must have been clear. *Id.*

15   Assuming that Plaintiffs' allegation of a promise is sufficient to satisfy the heightened
16   pleading standards for fraud, Wells Fargo argues that Plaintiffs have failed to plead "resulting
17   damage." *Id.* Although Plaintiffs allege that they were harmed in that they refrained from
18   obtaining alternative financing or proceeding with a short sale, Wells Fargo maintains that they
19   fail to allege that it has sold the home at a foreclosure sale, and Plaintiffs are therefore free to seek
20   alternative financing or a short sale at any time. *Id.* Wells Fargo further argues that Plaintiffs fail
21   to allege any facts that would support their ability to obtain alternative financing with terms that
22   are superior to those offered under their current modification agreement. *Id.*

23   Regarding Plaintiffs' allegation that they spent money improving the Subject Property,
24   Wells Fargo notes that they fail to explain what types of improvements they made. *Id.* Even if
25   they made improvements, Plaintiffs have not shown that those improvements fell outside of their
26   obligations under the Deed of Trust, which requires them to keep the property in good repair and
27   in compliance with state or federal health and safety laws. *Id.* at 4; RJN, Ex. A ¶ 6. Wells Fargo
28   also contends that if Plaintiffs could not make their loan payments, it was not reasonable for them

1    to pay for improvements to the Subject Property above and beyond those repairs necessary to keep
2    it in good repair.  Mot. at 4.
3           Plaintiffs also allege that they incurred costs associated with submitting financial
4    documentation for the loan modification, but Wells Fargo maintains that those costs were incurred
5    prior to any alleged misrepresentation.  *Id.*  Because borrowers must document their finances as
6    part of the loan modification application process before a modification can be offered, Wells
7    Fargo argues that Plaintiffs incurred the costs of applying for the loan modification before the
8    modification was offered.  *Id.* at 4-5.  Because Ms. Reeder's alleged false promise regarding the
9    second loan modification application was made after Plaintiffs incurred the costs to apply for the
10   loan modification, Wells Fargo argues that it could not have caused Plaintiffs to incur those costs.
11   *Id.* at 5.
12          With regard to Plaintiffs' allegation that they incurred attorneys' fees, Wells Fargo argues
13   that attorneys' fees alone are not sufficient to meet the damages element of a fraud claim.  *Id.*  It
14   maintains that "[i]f attorneys' fees alone was sufficient to support a claim for fraud, the final
15   element of a fraud claim - that there be resulting damages - would be meaningless, as virtually
16   every claim for fraud could assert attorneys' fees as the basis for damages.  If attorneys' fees were
17   the only harm, Plaintiffs could have avoided the harm by simply not filing suit."  *Id.*
18          Finally, Wells Fargo argues that Plaintiffs' allegation that Wells Fargo knew the
19   representations to be false and made them with the intention to deceive and defraud is insufficient
20   under the heightened pleading requirements for fraud.  *Id.* at 6.  Specifically, Wells Fargo argues
21   that Plaintiffs do not provide sufficient facts about the representations to infer that Ms. Reeder
22   intended to deceive and defraud them.  *Id.*  It further argues that the allegation that Wells Fargo
23   did not provide the second loan modification is not sufficient to establish intent not to perform the
24   alleged promise because something more than nonperformance is required.  *Id.*
25          In response, Plaintiffs argue that they have plead the "who, what, when, where, and how"
26   of their fraud allegations.  Opp'n at 5.  Plaintiffs note that they identify the telephone conversation
27   with Mary C. Reader in which they were told that they would be provided with a second loan
28   modification, the telephone number they called, and when the conversation occurred.  *Id.*

1. Legal Standard

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule 9(b)'s heightened pleading standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Yess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.") (internal quotation marks omitted). A Rule 9(b) pleading must ensure that "'allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

2. Application to the Case at Bar

Here, Plaintiffs' allegations have sufficient particularity to meet the requirements of Rule 9(b). Plaintiffs identify the "who," Wells Fargo representative Mary C. Reeder; the "when," July 2009; the "where," over the phone; and the "what" and "how," the specific representations that were made to them by Reeder and an explanation of how they were false. FAC ¶¶ 27-39. Plaintiffs also identify the "what" and "how," the specific representations that were made to them by a Wells Fargo representative regarding a second modification and an explanation of how they were false. *Id.* The Court finds these allegations sufficient at this stage in the proceedings. *See Izsak v. Wells Fargo Bank, N.A.*, 2014 WL 1478711, at *3 (N.D. Cal. Apr. 14, 2014) (finding that the plaintiff pled fraud with sufficient specificity where the plaintiff alleged that a named Wells Fargo representative suggested a loan modification over the phone in June 2011, and provided an explanation of how this representation was false).

As to Wells Fargo's argument that Plaintiffs have not adequately alleged damages, other

7

1   courts in this district have held that unwarranted late fees and attorney's fees are sufficient at the
2   motion to dismiss stage. *Id.* at *4. Accepting Plaintiffs' factual allegations as true and construing
3   the pleadings in the light most favorable to them, the Court also finds that Plaintiffs have stated
4   plausible allegations of intent. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other
5   conditions of a person's mind may be alleged generally.") Accordingly, dismissal on this ground
6   is inappropriate and the Court DENIES Wells Fargo's Motion to Dismiss Plaintiffs' claim for
7   fraud.

**B.     Promissory Estoppel**

In their Second Cause of Action for Promissory Estoppel, Plaintiffs allege that they justifiably relied on Ms. Reeder's representation that if they entered into a loan modification agreement and made payments for the first 12 months, Wells Fargo "would give Plaintiffs a new loan modification agreement that would decrease the monthly payment amount for the next year." FAC ¶¶ 29, 41. They further allege that they were injured by their reliance as they refrained from obtaining other alternatives to remedy the situation. *Id.* ¶ 42. Plaintiffs allege damages in that they spent money improving the property and in complying with Wells Fargo's requests for financial and other information. *Id.* ¶ 43. They are now subject to foreclosure proceedings and the loss of their primary residence, and they have incurred and will incur costs and attorneys' fees. *Id.* ¶ 46.

In its Motion, Wells Fargo argues that Plaintiffs' promissory estoppel claim is time barred because they were informed in July of 2010 that Wells Fargo would not provide them a second loan modification, yet they did not file this action until June of 2013. Mot. at 7. Even if it were not time barred, Wells Fargo maintains that the claim fails for lack of foreseeable reliance and lack of an injury. *Id.* Specifically, it argues that Plaintiffs have plead no injury from their reliance because the foreclosure sale has not yet occurred and they may still pursue other alternatives to remedy the default. *Id.* at 8. As to Plaintiffs' allegations that they spent money improving the Subject Property, Wells Fargo argues that Plaintiffs were obligated by the deed of trust to maintain the property; hence, any injury resulting to Plaintiffs by their actions in contravention of the terms of the deed of trust were not reasonably foreseeable by Wells Fargo. *Id.* Although Plaintiffs

8

1    allege that they spent money complying with Wells Fargo's requests for financial information,
2    Wells Fargo maintains that this compliance occurred prior to the alleged misrepresentations and
3    could not have caused the reliance or injury. *Id.*

4    In response, Plaintiffs argue that Wells Fargo's own conduct delayed their filing of the
5    original Complaint, and it is therefore estopped from asserting a statute of limitations defense.
6    Opp'n at 3. Specifically, Plaintiff argues that, although Wells Fargo failed to provide a loan
7    modification in July 2010, it repeatedly told Plaintiffs "that it had nothing available 'right now'
8    and to 'try again, later.'" *Id.* at 3-4. Plaintiffs maintain that they contacted Wells Fargo once a
9    month for over two years to discuss getting a new loan modification and were continually told to
10   try again later. *Id.* at 4.

11       1.    <u>Legal Standard</u>

12   Under California law, "[a] promise which the promisor should reasonably expect to induce
13   action or forbearance on the part of the promisee or a third person and which does induce such
14   action or forbearance is binding if injustice can be avoided only by enforcement of the promise."
15   *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000); *see*
16   *also Platt Pacific, Inc. v. Andelson*, 6 Cal.4th 307, 320 (1993) ("Under the doctrine of promissory
17   estoppel, the promise by one party and the resulting detrimental reliance on that promise by
18   another party operate as a substitute for consideration that may make the modification enforceable
19   to the extent necessary to prevent injustice."). "The elements of promissory estoppel are (1) a
20   clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of
21   the obligation assumed and not performed." *Moncada v. West Coast Quartz Corp.*, 221 Cal. App.
22   4th 768, 780 (2013) (internal quotation marks omitted). The alleged promise must be "definite
23   enough that a court can determine the scope of the duty[,] and the limits of performance must be
24   sufficiently defined to provide a rational basis for the assessment of damages." *Garcia v. World*
25   *Savings, FSB*, 183 Cal. App. 4th 1031, 1045 (2010) (internal quotation marks omitted).

26   For state law claims in federal court, state statutes of limitations, including their tolling
27   rules, are "substantive" for *Erie* purposes. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99,
28   110 (1945). Under California law, a cause of action must be brought in state court within the

limitations period after it has accrued. Cal. Code Civ. Proc. § 312. A cause of action accrues at "the time when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999). If promissory estoppel is premised on an oral agreement, then it is subject to a two year statute of limitations. Cal. Civ. Proc. Code § 339(1); *Perez v. CitiMortgage, Inc.*, 2014 WL 2609656, at *3 (C.D. Cal. June 10, 2014) (citing *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 220-21 (1991)).

       2.       <u>Application to the Case at Bar</u>

Here, Plaintiffs' promissory estoppel claim is based on their July 16, 2009 telephone conversation with Mary C. Reeder. FAC ¶ 27-29. Plaintiffs allege that they were informed in July of 2010 that Wells Fargo would not provide them a second loan modification. FAC ¶¶ 17-18. However, they did not file this action until June of 2013. Their claim for promissory estoppel, therefore, appears to be barred by the two-year statute of limitations in California Code of Civil Procedure section 339(1).

Plaintiffs argue that although Wells Fargo failed in July 2010 to honor the alleged promise to provide a loan modification, the statute of limitations should not bar their claim for promissory estoppel because the limitations period should be equitably tolled. Specifically, Plaintiffs argue that Wells Fargo "did not simply refuse to provide a new loan modification in July 2010 and let Plaintiffs know at that time that it would never provide them with a new loan modification. Instead Defendant repeatedly told Plaintiffs that it had nothing available 'right now' and to 'try again, later.'" Opp'n at 3.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Here, Plaintiffs have not made any showing that "extraordinary circumstances" prevented them from filing their claims within the statute of limitations. Plaintiffs allege that Wells Fargo "represented to Plaintiffs that it would provide Plaintiffs with a new modification in one year to avoid a payment increase…." FAC ¶ 14. This alleged promise was therefore breached in July of 2010, one year after the initial modification. Subsequent representations regarding encouragements to "try again,

later" do not rise to the level needed to invoke equitable tolling. As Wells Fargo notes in its Reply, it is obligated to continue to consider borrowers for loan modification options as long as programs remain available and as long as borrowers document a material change in financial circumstances. Reply at 3, Dkt. No. 45 (citing Cal. Civ. Code §2923.6(g)). "So long as Wells Fargo maintains loan modification programs, it is not even permitted to represent to borrowers that it will 'never' modify their loans. Wells Fargo cannot predict the financial future of the borrowers and know whether or not they will have a change in financial circumstances that will make them eligible for a loan modification." *Id.* Thus, the Court finds that representations to Plaintiffs that they should "try again later" simply do not amount to "a series of wrongs" required to sustain the equitable tolling doctrine. Instead, they are discrete acts in compliance with statutory requirements. *See Stanley v. Trs. of the Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006) ("discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period.… Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.") (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 111-19 (2002)); *Karimian v. Caliber Home Loans Inc.*, 2013 WL 5947966, at *4 (C.D. Cal. Nov. 4, 2013) (finding no extraordinary circumstances where CitiMortgage informed the plaintiff in July 2010 that it would not provide her with a permanent loan modification, yet the plaintiff did not file her complaint until August 22, 2013).

Based on this analysis, the Court finds that Plaintiffs' claims are time-barred. Accordingly, the Court GRANTS Wells Fargo's Motion to Dismiss Plaintiffs' promissory estoppel claim WITHOUT LEAVE TO AMEND.

**C.    UCL Claim**

In their Third Cause of Action for violation of the UCL, Plaintiffs allege that Wells Fargo engaged in fraudulent business practices because the promise to modify their loan was intended and likely to mislead them. FAC ¶ 51. Plaintiffs further allege that Wells Fargo engaged in unfair business practices because it violated laws designed to prevent foreclosure by requiring mortgage holders and servicers to engage in honest prevention efforts. *Id.* ¶ 53. Wells Fargo argues that this claim must fail because it is based on defective common law claims. Mot. at 9. It further argues

11

that Plaintiffs cannot show that they satisfy the causation requirement of the UCL because they fail to establish any injury. *Id.* at 9-10.

### 1. Legal Standard

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The statute "has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices that specifically prescribed by any other law.'" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002)). "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel–Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999) (internal quotations and citations omitted).

### 2. Application to the Case at Bar

Here, the Court has not dismissed Plaintiffs' claim for fraud claim. As this common law cause of action may serve as the predicate unlawful conduct for Plaintiffs' UCL claim, Wells Fargo's argument first argument is unavailing. *See Izsak*, 2014 WL 1478711, at *6 (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012)). However, Wells Fargo also argues that Plaintiffs lack standing to bring the UCL claim because they cannot show that they satisfy the causation requirement of the UCL. Mot. at 9.

"[T]he phrase 'as a result of' in the UCL imposes a causation requirement; that is, the alleged unfair competition must have caused the plaintiff to lose money or property." *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (2008). However, courts have held that the plaintiff need not allege reliance on misrepresentations, and may allege "causation more generally." *Olivera v. Am. Home Mortgage Servicing, Inc.*, 689 F. Supp. 2d 1218, 1224 (N.D. Cal. 2010); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007). In this case, Plaintiffs allege that, but for Wells Fargo's deceptive and fraudulent representations regarding the loan modification, they would not have suffered damages. FAC ¶¶ 48-55. Plaintiffs allege they spent money

improving the Subject Property in reliance on Wells Fargo's promise to modify the loan. *Id.* ¶ 54. From this, the Court may infer that Plaintiffs incurred damages that would not have occurred but for Wells Fargo's promise to provide a second loan modification. *Hall*, 158 Cal. App. 4th at 859) (holding a UCL plaintiff must plead injury-in-fact and causation in order to state a claim). Accordingly, the Court DENIES Wells Fargo's Motion to Dismiss Plaintiffs' cause of action for violation of the UCL.

## CONCLUSION

Based on the analysis above, the Court GRANTS Wells Fargo's Motion to Dismiss Plaintiffs' promissory estoppel cause of action WITHOUT LEAVE TO AMEND. The Court DENIES Wells Fargo's Motion as to Plaintiffs' fraud and UCL claims.

The Court shall conduct a Case Management Conference on August 7, 2014, at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California. The parties shall file a joint case management statement by July 31, 2014.

**IT IS SO ORDERED.**

Dated: July 11, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge