UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PETERSON, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　Defendant. | Case No. 13-cv-03392-MEJ<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 60 |

## INTRODUCTION

This action arises from a secured residential loan that Plaintiffs Michael and Toni Peterson ("Plaintiffs") received in 2007. Defendant Wells Fargo Bank, N.A. ("Defendant") provided them a modification with reduced payments, but Plaintiffs allege that they were promised an additional modification after a year of payments, which they did not receive. Pending before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 60. Plaintiffs have filed an Opposition (Dkt. No. 65), and Defendant has filed a Reply (Dkt. No. 71). The Court finds this motion suitable for disposition without oral argument and hereby VACATES the June 25, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's motion for the reasons set forth below.

## BACKGROUND

**A.   Factual Background**

On December 21, 2007, Plaintiffs borrowed $900,000.00 from World Savings Bank, FSB secured by a deed of trust recorded against 4442 Arlington Ave, Santa Rosa, California (the "Property"). Armstrong Decl., Ex. A, Dkt. No. 63. Subsequently, in January 2008, World

1   Savings Bank, FSB changed its name to Wachovia Mortgage, FSB, and later changed its name to
2   Wells Fargo Bank Southwest, N.A., before merging into Wells Fargo Bank, N.A. in November
3   2009.[1]

4   Ms. Peterson contacted Defendant in mid-2009 to request a loan modification.[2]  After she
5   submitted the necessary documentation, Wells Fargo sent her a loan modification offer on July 13,
6   2009.  *Id.*, Ex. B.  The offer provided for an increase in loan payment amounts every year between
7   2009 and 2015.  *Id.*  On July 15, 2009, after receiving the offer, Ms. Peterson called Defendant
8   and spoke with representatives about the terms of the loan modification, at which time she was
9   informed that its terms were not negotiable.  Mueggenberg Decl., Ex. 3 (Wells Fargo Servicing
10  Process Note Logs) at WF001577, Dkt. No. 64.  The record reflects that Ms. Peterson called at
11  least three more times on July 16, requesting additional details about the loan modification.  *Id.*

12  Ms. Peterson called Defendant again on July 17, 2009, stating that Plaintiffs would not be
13  able to afford the loan payment in six years, but was again advised that the terms of the
14  modification were not negotiable.  *Id.*, Ex. 2 (entries from Wells Fargo's Note Logs from its "Loss
15  Mitigation Process Notes") at WF001440; T. Peterson Dep. at 25:1-30:25.  She called again on
16  July 17, at which time she was advised that she "may have other options within the next couple of
17  years."  Mueggenberg Decl., Ex. 2 at WF001440.  Ms. Peterson called again on July 17, stating
18  that the payments and interest rates for 2015 were too high.  Mueggenberg Decl., Ex. 2 at
19  WF001440; T. Peterson Dep. at 34:1-37:17.  She was again informed that the terms of the
20  modification were not negotiable.  Mueggenberg Decl., Ex. 2 at WF001440.  Ms. Peterson stated
21  that she did not know if she would accept the modification offer and apply for the Home
22  Affordable Modification Program[3] ("HAMP"), or not accept it, but also apply for HAMP.

---

[1] The Court previously took judicial notice of the documents establishing this history.  Order re: Motion to Dismiss at 2 n.1, Dkt. No. 37.

[2] This fact appears in Defendant's Separate Statement of Facts (Dkt. No. 62, Fact No. 2) with the following citation: Armstrong Decl., Ex. D (T. Peterson Dep.) at 79:10-24.  It appears that Defendant inadvertently failed to include page 79 in its filing as the Court is unable to locate it.  However, Plaintiffs do not dispute this fact.  *See* Pls.' Separate Statement of Undisputed Facts at 2, Dkt. No. 66 (Response to Defendant's Undisputed Material Fact No. 2: "Undisputed."

[3] HAMP was part of Congress's response to the financial and housing crisis that struck the country

Mueggenberg Decl., Ex. 2 at WF001440.

At her deposition, Ms. Peterson testified that the representative informed her during these conversation that she would "help you again next year." T. Peterson Dep. at 26:8-23. She also testified that during one of the conversations, the representative stated: "No problem. We'll . . . fix it again next year." *Id.* at 15:7-15. She understood this to mean that she had to accept the offered loan modification and pay for a year under the terms of that offer in order to be given a different modification that would contain a fixed affordable payment. Peterson Decl. ¶ 10, Dkt. No. 68. Ms. Peterson testified that based on this representation, Plaintiffs accepted the loan modification. T. Peterson Dep. at 26:24-27:2. They signed the loan modification agreement and returned it to Defendant on July 21, 2009. Armstrong Decl., Ex. B. The loan modification agreement had a maturity date of July 15, 2049. *Id.*

On May 10, 2010, Ms. Peterson called Defendant again with additional questions about her loan modification, expressing concern that her payment would be increasing soon and that she would not be able to afford it. Mueggenberg Decl. Ex. 3 at WF001571. The representative provided the telephone number for loan counseling and transferred her to the collection department. *Id.* Ms. Peterson called again on June 28, 2010 and asked questions about the upcoming payment change in August. *Id.* at WF001570. According to the record, she attempted to determine whether Defendant "can do anything to help," and the representative again transferred her to loan counseling to discuss other options. *Id.*

On July 15, 2010, Ms. Peterson called Defendant to ask whether the bank could reduce her minimum payment. *Id.* at WF001568. She was informed that she was not eligible for another loan modification. *Id.* She called again that day and spoke to another representative, asking if she could apply for a loan modification. *Id.* at WF001568. After she was advised that she was ineligible, Ms. Peterson inquired about a refinance and informed the representative that she was not interested in a short sale. *Id.* at WF001567-68. She also inquired about payment assistance

---

in the fall of 2008. It provided an incentive for lenders to modify mortgages so that struggling homeowners could stay in their homes. *See* "Emergency Economic Stabilization Act of 2008," Pub L. No. 110-343, 122 Stat. 3765 (2008), codified at 12 U.S.C. § 5201 et seq.

options, but was advised that she did not qualify. *Id.* at WF001566. Ms. Peterson called several more times on July 15 with similar questions, but was repeatedly informed that she did not qualify for any additional modifications. *Id.* at WF001565. Ms. Peterson called Defendant again on July 16 and asked for assistance in lowering her payment. *Id.* The representative advised her that a short sale may be her only option. *Id.*

Plaintiffs later contacted Defendant to apply for a modification under HAMP, but Defendant determined they did not meet the qualifications for HAMP because their loan balance exceeded the maximum allowable limit. *Id.* at WF001544-58. Ms. Peterson called Defendant multiple times with similar requests for a modification from July 2010 to November 2011. *Id.* at WF001537-64; Ex. 1 (Bankruptcy Process Notes) at WF001322, 1342-43, 1354, 1359-62, 1376-77, 1402. These note logs do not reflect any statements from Ms. Peterson during this time that she was promised an additional loan modification.

Ms. Peterson also sent multiple letters to Defendant from September 2010 to September 2012. T. Peterson Dep. at 91:17-96:21; Armstrong Decl., Ex. C. The letters also do not mention any promise of an additional loan modification.

Mr. Peterson testified that he was not interested in a short sale at the time he signed the loan modification application. Armstrong Decl., Ex. E (M. Peterson Dep.) at 20:9-22:9. Plaintiffs did not apply for alternative financing at any time, even after learning that they would not get another loan modification. *Id.* at 22:4-9. However, Ms. Peterson testified that, prior to signing the loan modification, she was considering leaving the house, including a short sale. T. Peterson Dep. at 48:23-49:5; Mueggenberg Decl., Ex. 3 at WF001565. Plaintiffs have produced no evidence that they would have been able to obtain alternative financing with terms that are superior to those offered under the loan modification agreement. Armstrong Decl., Ex. F (Response to Special Interrogatory 15).

Plaintiffs have been living at the Property without making payments for approximately two years. T. Peterson Dep. at 66:15-70:15. The Property has not been sold at a trustee's sale. *Id.* at 66:15-24.

**B.     Procedural Background**

On June 19, 2013, Plaintiffs filed the present case in Sonoma County Superior Court, case number SCV-253841.  Not. of Removal, Ex. A (Compl.), Dkt. No. 1.  They asserted four state law claims: (1) fraud; (2) promissory estoppel; (3) negligent misrepresentation; and (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  Compl. ¶¶ 27-63.  Defendant removed the case to this Court on July 22, 2013, based on diversity of citizenship.  Dkt. No. 1.  Defendant subsequently moved to dismiss on July 29, 2013.  Dkt. No. 8.  On May 13, 2014, the Court granted Defendant's motion without leave to amend as to Plaintiffs' negligent misrepresentation claim, but granted leave to amend as to the fraud, promissory estoppel, and UCL claims.  Dkt. No. 37.

Plaintiffs filed their First Amended Complaint ("FAC") on June 6, 2014, asserting three claims: (1) fraud; (2) promissory estoppel; and (3) violation of the UCL.  Dkt. No. 40.  Defendant again moved to dismiss Plaintiffs' claims on June 20, 2014.  Dkt. No. 41.  On July 11, 2014, the Court granted Defendant's motion as to the promissory estoppel claim, without leave to amend, and denied the motion as to Plaintiffs' fraud and UCL claims.  Dkt. No. 46.

Defendant filed the present Motion for Summary Judgment on April 30, 2015, arguing that Plaintiffs' remaining claims lack evidentiary support and fail as a matter of law.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (quotations omitted).

## DISCUSSION

**A.     Fraud**

In order to state a claim for fraud, Plaintiffs must allege facts showing that Defendant: (1) made a misrepresentation to Plaintiffs; (2) Defendant knew the representation was false; (3) Defendant intended to induce Plaintiffs to rely on the misrepresentation; (4) Plaintiffs justifiably relied on the misrepresentation; and (5) damages. *Lovejoy v. AT & T Corp.*, 92 Cal. App. 4th 85, 93 (2001) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).

Plaintiffs allege they accepted the loan modification offer on the promise that once they made twelve monthly payments, they would receive a second loan modification with lower payments than those detailed in the first modification. FAC ¶ 29. They further allege that Defendant's representations regarding the loan modification were false and made with the intent to

deceive and defraud them. *Id.* ¶ 33. At the time these representations were made, Plaintiffs believed them to be true and, had they known the falsity of these representations, they would not have accepted the offer. *Id.* ¶ 35. As a result of Defendant's conduct, Plaintiffs allege they have suffered damages, including by refraining from obtaining alternative financing or proceeding with a short sale, spending money on improvements to the Property, costs associated with submitting financial documentation for the loan modification, and attorneys' fees and costs. *Id.* ¶¶ 42-43

### 1. Defendant's Position

Defendant argues that it is entitled to judgment as a matter of law because Plaintiffs' allegations differ substantially from the facts uncovered during discovery. Mot. at 4. Defendant maintains that the evidence in this case establishes that it never offered a second modification, but instead advised Ms. Peterson that the terms of the modification were not negotiable and that she "may have other options within the next couple of years." *Id.* at 5 (citing T. Peterson at 26:8-30:25; Mueggenberg Decl., Ex. 2, WF001440). Defendant further argues that, however the alleged representations are construed, Plaintiffs cannot establish a fraud claim because the statements were true. *Id.* at 6. Defendant notes that Ms. Peterson admitted in her deposition that the representative did not say how she would help them in a year, and there were no representations about what help or options would be available. *Id.* (citing T. Peterson at 26:8-30:25; Mueggenberg Decl., Ex. 2 at WF001440).

Next, Defendant argues that Plaintiffs' fraud claim is barred by the parol evidence rule, as any oral representation that Plaintiffs would receive another loan modification in a year is directly at odds with the terms of the written loan modification agreement. *Id.* at 7-8. Defendant maintains that Plaintiffs cannot claim to have reasonably relied on a representation that directly contradicted the documents they signed. *Id.* at 8.

Finally, Defendant argues that Plaintiffs have failed to establish damages. *Id.* at 9. Defendant notes that Plaintiffs have presented no evidence that they would have been able to obtain alternative financing with terms that are superior to those offered under their current modification agreement. *Id.* As to Plaintiffs' actual damages, it argues: (1) the improvements Plaintiffs made to the Property could not have been foreseen because they were prohibited by the

7

1  deed of trust absent specific consent; (2) any costs related to the loan modification process were
2  incurred prior to any alleged misrepresentation; (3) no damages occurred based on payments made
3  under the loan modification agreement as Plaintiffs were already obligated to make much larger
4  payments on the original loan; and (4) attorneys' fees alone are not sufficient to meet the damages
5  element of a fraud claim. *Id.* at 9-11.

        2.        <u>Plaintiffs' Position</u>

Plaintiffs argue that summary judgment is improper because they can establish all the elements of their fraud claim. Opp'n at 4. As to misrepresentation, Plaintiffs maintain that Defendant offered them a loan modification in which the amount of the monthly payment was set to increase every year from 2009 through 2015, but as part of this offer, it would provide Plaintiffs with a new modification in one year to avoid the payment increase. *Id.* at 5. In support of their argument, they note that Ms. Peterson testified that Defendant's representative said "no problem, we'll fix it for you again next year" in response to her complaints about the payment increasing and becoming unaffordable. *Id.* at 7 (citing and quoting T. Peterson Dep. at 15:14-19, 16:14-15, 17:16-19). Based on this conversation, Plaintiffs contend they understood that a deal had been reached. *Id.* (citing T. Peterson Dep. at 27:1-2: "Okay. I'll accept it, and you'll help me out next year, and I'll sign it."). Plaintiffs contend this is evidence of a promise made and accepted, and "[i]t is for the trier of fact to determine whether Defendant's evidence of the statement not being reflected verbatim in the Note Logs is more or less convincing than Plaintiffs['] testimony. *Id.*

As to falsity, Plaintiffs argue they "can also produce evidence" that Defendant's representative knew they would not qualify for additional aid in a year. *Id.* Although they cite to no evidence in support, Plaintiffs contend "[i]t was known at the time the July 2009 loan modification offer was made that Plaintiffs were ineligible for a HAMP modification, that Defendant did not make second in-house modifications, and that Plaintiffs could not afford their original loan or the offered modification over the long term." *Id.* Because the representative had no "reason to suspect Plaintiffs could qualify for refinancing or that they would be allowed to apply for a second in-house modification," Plaintiffs contend "[t]he promise was made without any intention of performing and nonperformance was the intention from the beginning." *Id.* at 8.

8

As to intent, Plaintiffs state they "can also provide evidence that the promise was made to induce Plaintiffs to accept and start paying pursuant to the July 2009 loan modification agreement." *Id.* In support of this argument, Plaintiffs note that the loan modification is an interest-only payment plan for five years and that "[a]ny additional interest only, pure profit payments Defendant could coax Plaintiffs into making were to Defendant's benefit and there was no risk for Defendant in waiting to foreclose." *Id.* They further argue that "[b]y keeping Plaintiffs in the home and collecting interest only payments for as long as possible, Defendant maximized its profit and was able to wait for a better market to arise before Plaintiffs inevitably defaulted and Defendant could foreclose." *Id.* They contend that "Defendant saw an opportunity to collect more money from Plaintiffs, who would continue to reside in and maintain the property while Defendant waited for the property value to increase until foreclosure was more profitable." *Id.*

As to reliance, Plaintiffs maintain that they "had every reason to trust Defendant and its employees when Defendant represented to them that if Plaintiffs accepted the loan modification offer of July 2009, Plaintiffs would be provided a new modification in one year that would negate the scheduled increase in the payment amount contained in the July 2009 offer." *Id.* at 9. Although Defendant asserts that their claim is subject to the parol evidence rule, Plaintiffs note that the loan modification agreement contemplates a long-term repayment plan that is subject to revision only by written instrument, and that "[t]he promise that such a written instrument will materialize in a year is not a contradiction of the terms of the agreement." *Id.*

Finally, as to damages, Plaintiffs argue they would not have signed the loan modification offer without the representation that they would not be required to make increased payments in a year. *Id.* at 10 (citing T. Peterson Dep. at 17:8-19; M. Peterson Dep. at 15:11-16:2, 23:1-15). Plaintiffs contend they were harmed because the representation caused them to take on an obligation they knew they could not afford and which they had intended to reject prior to the misrepresentation. *Id.* (citing T. Peterson Dep. at 22:11-15). Plaintiffs note they had considered moving out, short sale and refinancing, "but stopped all search for alternative solutions, based on Defendant's representation that a new loan modification would be provided." *Id.* (citing T. Peterson Dep. at 18:2-13, 49:12-50:2; M. Peterson Dep. at 15:11-15, 22:4-6). Although Defendant

1  asserts that all of Plaintiffs' expenses were acquired in obtaining the July 2009 loan modification,
2  Plaintiffs note that Ms. Peterson testified to expenses incurred "in fruitless attempts to obtain the
3  promised second modification." *Id.* (citing T. Peterson Dep. at 63:3-21).

### 3. Discussion

Having reviewed the record in this case, the Court finds that that Plaintiffs have failed to provide evidence showing that there is some genuine issue for trial. Although Plaintiffs maintain Defendant made an oral promise that was inconsistent with the terms of the parties' written agreement, and that they signed the agreement based on that oral promise, their position is untenable for several reasons.

First, Plaintiffs ask the Court to accept extrinsic oral evidence that alters the terms of the parties' written agreement. The parol evidence rule "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004); *see also* Cal. Civ. Proc. Code. § 1856. "'Integration' means the extent to which a writing constitutes the parties' final expression of their agreement." *Esbensen v. Userware Int'l, Inc.*, 11 Cal. App. 4th 631, 636 (1992).

By statute, parol evidence is admissible "to establish illegality or fraud." Cal. Civ. Proc. Code § 1856(g). "Fraud in the inducement renders the entire contract voidable, including any provision in the contract providing the written contract is, for example, the sole agreement of the parties, that it contains their entire agreement and that there are no oral representations." *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 301 (2005); *see also Bell v. Exxon Co.*, 575 F.2d 714, 715-16 (9th Cir. 1978). However, California's "conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Pendergrass*, 4 Cal. 2d 258, 263 (1935); *see also Brinderson-Newberg Jt. Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 281 (9th Cir. 1992); *Casa Herrera*, 32 Cal. 4th at 346-47. Stated differently, if a "false promise is either independent

of or consistent with the written instrument," and does not contradict the express terms of an integrated document, the section 1856(g) fraud exception applies. *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 873 (2002); *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1426 (1992).

It is undisputed that the loan modification agreement that Plaintiffs signed provides for an increase in loan payment amounts every year between 2009 and 2015, with a loan maturity date of 2049. Armstrong Decl., Ex. B. It is also undisputed that Defendant repeatedly informed Ms. Peterson that the terms of the loan modification agreement were not negotiable. Peterson Decl. ¶ 5; Mueggenberg Decl., Ex. 3 at WF001577; Ex. 2 at WF001440. Despite the agreement's explicit provision that the loan payments would increase each year, Plaintiffs maintain the parties' agreement actually called for lowered payments after one year. The parol evidence rule bars such evidence because it contradicts the express terms of the parties' written agreement. *Pac. State Bank v. Greene*, 110 Cal. App. 4th 375, 389-90 (2003); *Newmark v. H & H Prods. Mfg. Co.*, 128 Cal. App. 2d 35, 37-38 (1954); *Bank of Am. v. Lamb Fin. Co.*, 179 Cal. App. 2d 498, 502 (1960) ("[I]f the false promise relates to the matter covered by the main agreement and contradicts or varies the terms thereof, any evidence of the false promise directly violates the parol evidence rule and is inadmissible."). The terms of the loan modification agreement extended well beyond "next year" to the remaining life of the loan. Armstrong, Ex. B. Accordingly, as the only evidence Plaintiffs proffer in support of their fraud claim is an alleged oral promise that contradicts the terms of the written agreement, their claim is barred by the parol evidence rule.

Second, even if the Court were to accept such evidence, the allegations in Plaintiffs' FAC differ from the evidence presented. The FAC alleges that Plaintiffs accepted the loan modification offer on the false promise that they were guaranteed to receive a second loan modification in a year with lower payments. FAC ¶ 29. Despite these allegations, Plaintiffs present evidence that establishes, at most, that Defendant's representative promised to "help [them] again next year" and that Defendant would "fix it for you again next year." T. Peterson Dep. at 15:7-15, 26:8-23. Plaintiffs maintain that Ms. Peterson "understood this to mean that I would be able to get a new loan modification in a year, so that my payment amount would stay affordable and I would not end up having to pay the increase as set out in the offer, but that I would have to pay for a year

under the July 13, 2009 loan modification before a new payment amount would be offered." Peterson Decl. ¶ 10. This interpretation conflicts with her prior testimony, where she repeatedly stated that Defendant's representative did not say how she would "help [her] in a year." T. Peterson Dep. at 26:8-30:25. In her Declaration, Ms. Peterson states that she "was repeatedly told this was the only offer they would make and I could not negotiate the terms." Peterson Decl. ¶ 5.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quotations and citation omitted). Other than Plaintiffs' self-serving statements, there is no evidence of a specific promise that they were guaranteed a second loan modification in one year. *See Blake v. Paramount Pictures, Inc.*, 22 F. Supp. 249, 252 (S.D. Cal. 1938) ("To be fraudulent as having been made without intention to perform, a promise must be specific, definite."); *Hills Trans. Co. v. Southwest*, 266 Cal. App. 2d 702, 708 (1968) (allegations of false promise claim "should be clear, specific, and unequivocal"); *Davis v. Rite-Lite Sales Co.*, 8 Cal. 2d 675, 681 (1937) ("In an action for fraud and deceit the allegations of fraud must be clear and unequivocal."). Ms. Peterson herself testified that she signed the agreement not knowing what Plaintiffs would have to do to get another loan modification, only that they would need to "reapply and [Defendant] would help me again." T. Peterson Dep. at 34:1-37:17.

Further, as noted above, it is undisputed that the loan modification agreement extends through 2049 and provides for an increase in loan payment amounts every year between 2009 and 2015, and that Ms. Peterson was repeatedly informed that the terms of the loan modification agreement were not negotiable. At most, Plaintiffs have established that Defendant offered to assist them in the future if they were eligible, but there are no specific facts showing that Defendant promised to grant Plaintiffs a second loan modification. Accordingly, Plaintiffs cannot establish a fraud claim. *See*, *e.g.*, *Sholiay v. Fed. Nat. Mortg. Ass'n*, 2013 WL 5569988, at *3, 7 (E.D. Cal. Oct. 9, 2013) (dismissing fraud and wrongful foreclosure claims, finding: "At no point in this letter did U.S. Bank promise to grant plaintiff a loan modification. Rather, U.S. Bank stated that plaintiff 'may' be offered a loan modification if he was eligible and qualified for one."); *Talaie v. Wells Fargo Bank, N.A.*, 2013 WL 3316157, at *4 (C.D. Cal. June 27, 2013) ("Nothing

12

about Wells Fargo's representations suggested that Plaintiffs were guaranteed or entitled to a loan modification—they were always, or should have been, aware of the possibility of denial and it is not clear that knowledge of this additional fact would have altered their decision to seek modification from Wells Fargo."); *Becker v. Wells Fargo bank, N.A., Inc.*, 2011 WL 1103439, at *11 (E.D. Cal. Mar. 22, 2011) *report and recommendation adopted as modified sub nom. Becker v. Wells Fargo Bank, N.A.*, 2011 WL 3319577 (E.D. Cal. Aug. 1, 2011).

Third, Defendant does not dispute that the representative's statements were true. Mot. at 6. Defendant later reviewed Plaintiffs' situation for other loss mitigation options. Defendant notes that it reviewed them for other loss mitigation options, including payment assistance on July 15, 2010 (for which they did not qualify), the option of a short sale on July 16, 2010 (which they declined), and modification under HAMP (for which they did not meet the qualifications because their loan balance exceeded the maximum allowable limit). *Id.* at 6-7 (citing Mueggenberg Decl., Ex. 3 at WF001544-60, WF001566-68). This is consistent with the statements made by Defendant: representations about the possibility of future events. *See Talaie*, 2013 WL 3316157, at *4 ("Plaintiffs do not allege any facts to show that Defendants never intended to evaluate their requests for modification or that Defendants found Plaintiffs ineligible for modification and yet misrepresented an intent to assist them in obtaining one. There are no allegations that any representative of Defendants represented to Plaintiffs that they were eligible or had already been approved for a loan modification when their requests were denied. In short, Plaintiffs fail to allege any misrepresentation upon which to base this aspect of their fraud claim.").

Fourth, even if Plaintiffs could establish a misrepresentation on Defendant's part, Plaintiff's claim cannot survive summary judgment because they have not pointed to sufficient evidence from which a jury could reasonably infer that Defendant's representative knew her statements were false or intended to deceive Plaintiffs. Although intent may be established by inference from the acts of the parties, *Santoro v. Carbone*, 22 Cal. App. 3d 721, 728 (1972), *disapproved of on other grounds by Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18 (1985), and the Court must give Plaintiffs the benefit of all reasonable inferences on summary judgment, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), Plaintiffs'

circumstantial evidence of intent falls short of raising a triable issue of fact. In the absence of an economic motive for Defendant's actions, Plaintiffs have a heavy burden of coming forward with persuasive evidence. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1470 (9th Cir. 1987).

Plaintiffs argue that "[b]y keeping Plaintiffs in the home and collecting interest only payments for as long as possible, Defendant maximized its profit and was able to wait for a better market to arise before Plaintiffs inevitably defaulted and Defendant could foreclose." Opp'n at 8. Plaintiffs provide no evidence of this intent, and a statement that they "can" produce such evidence does not meet their burden to set forth specific facts at the summary judgment stage. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. If Plaintiffs fail to make this showing at summary judgment, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (quotations omitted). Thus, Plaintiffs' "circumstantial evidence of scienter and intent falls short of raising a triable issue of fact." *Eisan v. Wells Fargo Bank*, 2014 WL 1794144, at *5 (N.D. Cal. May 6, 2014) ("At the hearing, [Plaintiff] argued that Defendant had an incentive to deny Plaintiff a foreclosure hold because the property was worth more than the lien. However, there is no evidence of this fact in the record, and no evidence that the value of the property would have changed if foreclosure were delayed.").

Fifth, even if Plaintiffs relied on the representative's statement in agreeing to the loan modification, they cannot show that their reliance was reasonable. Plaintiffs were notified on several occasions that the terms of the agreement were not negotiable, they expressed concerns that the scheduled payments would eventually be unaffordable, and they stated their intent to file an application for a HAMP modification in the future. Mueggenberg Decl., Ex. 2 at WF001440-41; T. Peterson Dep. at 34:1-37:17. Further, Ms. Peterson testified that she signed the agreement not knowing what Plaintiffs would have to do to get another loan modification, T. Peterson Dep. at 34:1-37:17, yet Plaintiffs failed to get any specifics from Defendant about what kind of help they would receive or what options would be available to them in the future. As Plaintiffs have failed to put forth any evidence showing specific terms of a guaranteed second loan modification, they cannot show justifiable reliance. *See Talaie*, 2013 WL 3316157, at *4 ("Plaintiffs plead no facts

14

to show that they 'justifiably' relied on this misinformation in pursuing their loan modification. Nothing about Wells Fargo's representations suggested that Plaintiffs were guaranteed or entitled to a loan modification—they were always, or should have been, aware of the possibility of denial.").

Finally, Plaintiffs have failed to present any evidence of resulting damages. Plaintiffs must demonstrate that they substantially changed their position, either by act or forbearance, in reliance on Defendant's alleged promise. *Youngman v. Nev. Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969). They contend they were harmed by Defendant's representation because "it induced Plaintiffs to take on an obligation they knew they could not afford and which they had intended to reject prior to the misrepresentation." Opp'n at 10. However, Plaintiffs were already contractually obligated to make higher payments on the loan through their original loan contract. *See Newgent v. Wells Fargo Bank, N.A.*, 2010 WL 761236, at *6-7 (S.D. Cal. Mar. 2, 2010) (concluding that plaintiff's "reliance on the promise that Wells Fargo would delay the trustee's sale was not detrimental" because the plaintiff "was already legally obligated to make payments on her mortgage").

Plaintiffs also argue they suffered damages because they did not explore other options for remedying their situation, including "moving out, short sale and refinancing." Opp'n at 11. However, lost opportunity to pursue other strategies is insufficient to establish detrimental reliance because, once again, Plaintiffs were already obligated to make payments to Defendant under the original loan. *Ortiz v. Am.'s Servicing Co.*, 2012 WL 2160953, at *7 (C.D. Cal. June 11, 2012) ("Plaintiff contends that her reliance on ASC's alleged promise to modify her loan was to her detriment because she lost the opportunity to pursue other strategies to avoid foreclosure and suffered economic loss. . . . Merely submitting a modification application or making payments to the beneficiary or servicer, however, is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan." (citations omitted)).

Plaintiffs contend they also incurred expenses "in fruitless attempts to obtain the promised second modification," Opp'n at 11, but providing payments and documents to a bank for a loan is insufficient to establish the requisite damages. *Mehta v. Wells Fargo Bank, N.A.*, 2011 WL

15

1157861, *3 (S.D. Cal. Mar. 29, 2011); *Ortiz*, 2012 WL 2160953, at *7. Finally, the Court finds that Plaintiffs' claim for attorney's fees, on its own, is not sufficient to meet the damages element of a fraud claim. In denying Defendant's motion to dismiss Plaintiffs' fraud claim, the Court noted that unwarranted late fees and attorney's fees are sufficient allegations of damages at the motion to dismiss stage. Order at 7-8, Dkt. No. 46; *see also Johnson v. Bank of Am., N.A.*, 2015 WL 1387478, at *4 (N.D. Cal. Mar. 24, 2015). However, at this stage, Plaintiffs have failed to establish any genuine dispute as to whether Defendant fraudulently led them to believe they would receive a second loan modification. If Defendant committed no fraud, it cannot be held liable for damages.

In sum, Plaintiffs have failed to meet their burden of setting forth specific facts showing that there is some genuine issue for trial. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiffs' fraud claim.

**B.   UCL Claim**

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). Plaintiffs allege claims under each prong. FAC ¶¶ 50-53.

   1.   Unlawful Practices

An unlawful business practice under the UCL is "an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *Progressive W. Ins. Co. v. Yolo Cnty. Super. Ct. (Preciado)*, 135 Cal. App. 4th 263, 287 (2006) (emphasis in original) (citation omitted). "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (quotations and citations omitted); *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

Plaintiffs allege that Defendant "engaged in 'unlawful' business practices under the UCL based on the statutory violations described herein." FAC ¶ 52. The only statutory violation

alleged in the FAC, aside from the UCL provisions themselves, is California Civil Code section 1572, "Actual fraud." However, as discussed above, Defendant is entitled to judgment as a matter of law as to Plaintiffs' fraud claim. In their Opposition, Plaintiffs fail to address their UCL unlawful practices claim specifically, arguing only that "Plaintiffs' cause of action for fraud is sufficiently pled and provides for a satisfactory predicate violation under this section." Opp'n at 11. Accordingly, as Plaintiffs have failed to set forth specific facts or evidence showing that there is some genuine issue for trial, Defendant is entitled to judgment as a matter of law as to Plaintiffs' unlawful practices claim under the UCL.

### 2. Unfair Practices

A business practice that is not unlawful may nonetheless be actionable as an "unfair" business practice. *People ex rel. Harris*, 195 Cal. App. 4th at 774. An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008). Plaintiffs allege that Defendant "engaged in unfair business practices because it violated the laws and underlying legislative policies designed to prevent foreclosure, where possible, by requiring mortgage holders and servicers to engage in honest foreclosure prevention efforts." FAC ¶ 53. This claim also fails because the UCL requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (internal quotation marks and citation omitted). Once again, the only statutory violation Plaintiffs allege is for fraud, and, as discussed above, Plaintiffs have failed to set forth specific facts showing that there is some genuine issue for trial as to their fraud claim. Plaintiffs also fail to address their unlawful practices claim in their Opposition. Therefore, Defendant is entitled to judgment as a matter of law as to Plaintiffs' unlawful practices claim under the UCL.

### 3. Fraudulent Practices

Conduct is considered "fraudulent" under the UCL if the conduct is "likely to deceive." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009). A claim under this

prong of the UCL is based on the reasonable consumer standard, which requires the plaintiff to "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted). Although a UCL claim need not plead the elements of common law fraudulent deception, it must allege the existence of a duty to disclose, *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007), as well as reliance, *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009).

Plaintiffs' UCL claim under the fraud prong is based on allegations that "Defendant's statements were intended and likely to mislead Plaintiffs." FAC ¶ 51. Because Plaintiffs' separate claim for fraud relies on these same allegations and fails for the reasons explained above, there can likewise be no violation under the fraudulent practices prong of the UCL. Accordingly, Defendant is entitled to judgment as a matter of law as to Plaintiffs' fraudulent practices claim under the UCL.

## CONCLUSION

Based on the analysis above, the Court **GRANTS** Defendant's Motion for Summary Judgment. Judgment shall be issued accordingly by separate order.

**IT IS SO ORDERED.**

Dated: May 26, 2015

MARIA-ELENA JAMES
United States Magistrate Judge